UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLOPLAST A/S, <br><br> Plaintiff, <br><br> v. <br><br> GENERIC MEDICAL DEVICES, INC., <br><br> Defendant. | CASE NO. C10-227 BHS <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR A PERMANENT INJUNCTION |

This matter comes before the Court on Plaintiff Coloplast A/S's ("Coloplast") motion for a permanent injunction (Dkt. 224). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On February 8, 2010, Coloplast filed a complaint for patent infringement against Defendant Generic Medical Devices, Inc. ("GMD") alleging that GMD was indirectly infringing United States Patent No. 6,638,211 (the "'211 Patent") and United States Patent No. 7,621,864 (the "'864 Patent") (collectively "Patents-in-Suit"). Dkt. 1, ¶¶ 9-17.

1    On April 17, 2012, the Court began a seven-day jury trial.  On April 30, 2012, the
2 Jury returned a verdict finding that (1) Coloplast failed to prove direct infringement of the
3 '211 Patent, (2) Coloplast proved direct and indirect infringement of the '864 Patent, (3)
4 the Patents-in-Suit were not invalid, (4) Coloplast was entitled to a reasonable royalty
5 rate of $55 per device, and (5) Coloplast proved total damages of $159,775.  Dkt. 200.
6    On June 7, 2012, Coloplast filed a motion for a permanent injunction.  Dkt. 224.
7 On June 25, 2012, GMD responded.  Dkt. 232.  On June 29, 2012, Coloplast replied.
8 Dkt. 243.
9    On July 11, 2012, Coloplast filed a motion for a temporary restraining order
10 requesting immediate injunctive relief because GMD was allegedly dissolving.  Dkt. 246.
11 On July 17, 2012, the Court held a hearing, heard oral argument of counsel, and
12 requested additional briefing.  Dkt. 250.  During the hearing, the parties agreed to a
13 stipulated temporary restraining order pending a decision on the permanent injunction.
14 Dkt. 249.
15    On Jul 23, 2012, Coloplast filed a supplemental brief.  Dkt. 251.  On July 30,
16 2012, GMD filed a supplemental response.  Dkt. 257.  On August 1, 2012, Coloplast filed
17 a supplemental reply.  Dkt. 261.

## II. DISCUSSION

19    The Supreme Court has held that "the traditional four-factor framework that
20 governs the award of injunctive relief" applies to "disputes arising under the Patent Act."
21 *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006).  When seeking injunctive
22 relief, plaintiff bears the burden of demonstrating: (1) that it has suffered an irreparable

injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id*. at 391. The Court stated that "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity . . . ." *Id*. at 394.

**A.   Irreparable Injury**

Factors a court may consider in assessing irreparable injury are (1) the patent holder's loss in market share and access to customers; (2) the infringer's inability to satisfy a judgment; and (3) direct competition between the patent holder and the infringer. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1150 (Fed. Cir. 2011).

In this case, Coloplast initially submitted substantial evidence in support of irreparable injury. *See, e.g.*, Dkt. 242 at 4–11. The evidence supported Coloplast's claims of loss of customers, loss of business relationships, loss of good will, and loss of sales. The circumstances, however, have changed because GMD is ceasing operations and dissolving. Dkt. 252, Declaration of Theodore Budd, Exh. 1. This fact lends supports to the argument that GMD will be unable to satisfy any judgment entered against it. At trial, GMS's officers testified that GMD invested several million dollars in start-up costs and that its business was mainly limited to female urinary incontinence devices. Allowing GMD to complete some final infringing sales before it closes its doors, requiring Coloplast to obtain a judgment to enforce, and then take its place in the

creditor's line would contravene any principle of equity. Therefore, the Court finds that Coloplast has shown irreparable injury to warrant a permanent injunction.

**B. Monetary Damages**

GMD argues that Coloplast has failed to present credible evidence as to why monetary damages would not be sufficient. Dkt. 257 at 6. The Court heard the evidence of GMD's financial condition at trial and is not persuaded that monetary damages are even available to Coloplast, much less a sufficient remedy.

**C. Balance of Hardships**

The Court is persuaded that the balance of hardships favors Coloplast because it is unlikely Coloplast will be compensated for the infringing sales that have already occurred, much less final sales GMD seeks to complete. Moreover, GMD's hardship is the result of its calculated business risk to enter the relevant market with its devices. Therefore, the Court finds that the balance of hardships favors the entry of an injunction.

**D. Public Interest**

The Court agrees with GMD that the public has an interest in lower health care costs and increased competition. But that interest may not be fostered by infringing conduct. The Court is persuaded that the public is best served by enforcing Coloplast's patent rights. Therefore, the Court finds that the public interest would not be disserved by the entry of an injunction.

**E. Scope**

"[C]ourts have broad discretion in determining the scope of injunctive relief . . . ." *Johns Hopkins University v. CellPro, Inc.*, 152 F.3d 1342, 1354 (Fed. Cir. 1998). In this

1  caes, GMD argues that Coloplast's proposed injunction is overbroad. Dkt. 232 at 19–20.

2  The Court agrees, especially in light of GMD's decision to dissolve. The Court finds that

3  Coloplast's interests are sufficiently protected simply by enjoining GMD from selling its

4  remaining inventory of spiral or hook trocar model numbers 2041, 2042, 2046, 2047, and

5  2048 and/or devices that are merely colorably different.

6  The jury found that GMD indirectly infringed by either active inducement or

7  contributory infringement. Active inducement is satisfied by instructing an individual

8  "on how to engage in an infringing use . . . ." *DSU Medical Corp. v. JMS Co., Ltd.*, 471

9  F.3d 1293, 1305 (Fed. Cir. 2006) (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,*

10  *Ltd.*, 545 U.S. 913, 936 (2005)). GMD concedes that its products must be sold with the

11  accompanied instructions for use, which may not be changed by GMD. Dkt. 257 at 4.

12  Therefore, any sale would be active inducement of infringement.

13  With regard to contributory infringement, the jury must have found that GMD's

14  products do not have a substantial non-infringing use. Therefore, any sale would be

15  contributory infringement. Based on these conclusions, any sale by GMD would

16  constitute indirect infringement.

17  GMD does argue that it should be allowed to sell its remaining devices to

18  Coloplast's licensees. Dkt. 257 at 2–3. Although interesting, the argument is

19  unpersuasive and lacks any supporting evidence that Coloplast would not be irreparably

20  injured by such sales. For example, the Court is unaware of the terms of the licenses

21  between Coloplast and its licensees. Buying products from other manufacturers may be

22

prohibited and violate those contracts. Therefore, the Court declines to decrease the scope of the injunction as GMD requests.

### III. ORDER

Therefore, it is hereby **ORDERED** that Coloplast's motion for a permanent injunction (Dkt. 224) is **GRANTED** and the Court enters the following injunction:

> Generic Medical Devices, Inc., its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them who receive actual notice of this order by personal service or otherwise, are enjoined from infringing claims 1, 2, 3, 7, 8, and/or 11 of U.S. Patent No. 7,621,864 ("Method for Treating Urinary Incontinence in Women and Implantable Device Intended to Correct Urinary Incontinence") under 35 U.S.C. §§ 271(b) and/or (c), by
> (1) manufacturing, offering for sale, selling, or otherwise using, providing, or distributing in the United States, or importing into the United States, spiral trocar model numbers 2041, 2042, 2047, and 2048 and/or trocars that are merely colorably different; or
> (2) manufacturing, offering for sale, selling, or otherwise using, providing, or distributing in the United States, or importing into the United States, hook trocar model number 2046 and/or trocars that are merely colorably different.

Dated this 9th day of August, 2012.

BENJAMIN H. SETTLE
United States District Judge